_____ FILED      _____ ENTERED
_____ LOGGED     _____ RECEIVED

September 15 2020

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___TDD___, DEPUTY

**ATTACHMENT A**
**STIPULATION OF FACTS**

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Between August 2018 and August 2019, the Defendant, **MARVIN WINDELL GRAY**, also known as "**Marv**" ("**GRAY**"), conspired with **Anthony Kenneth Dotson Jr., also known as "Streetz," "Ghost," and "Rico"** ("**Dotson**"), **James Harvey, also known as "Fat Bread" and "Patches"** ("**Harvey**"), **Marcellus Woodland, also known as "Cellus"** ("**Woodland**"), **Tiara Mackall, also known as "Tee"** ("**Mackall**"), and others, to distribute fentanyl, heroin, cocaine, and cocaine base in the District of Maryland and elsewhere. The quantity of fentanyl involved in the offense and foreseeable to **GRAY** was at least 160 grams but less than 280 grams.

In general, **GRAY** and **Dotson** were drug distributors who operated in Charles County, Maryland, and who sold controlled substances to users and street-level drug dealers. **Harvey**, **Woodland**, and **Mackall** were subordinate distributors who sold controlled substances on **GRAY**'s and **Dotson**'s behalf.

In May 2018, Confidential Source 1 told law enforcement that **Harvey** was a "runner," or a subordinate drug dealer for **Dotson**. Three months later, at the direction of law enforcement, Confidential Source 1 made a controlled purchase of fentanyl mixed with heroin from **Harvey**.

Between January and May 2019, at the direction of law enforcement, confidential sources made several controlled purchases of fentanyl and heroin from **Dotson** and **GRAY**. For example, on May 21, 2019, **Dotson** texted Confidential Source 2 "Flameback," indicating that **Dotson** had potent fentanyl for sale. That day, at the direction of law enforcement, Confidential Source 2 made a controlled purchase of fentanyl mixed with heroin from **Dotson** and **GRAY**. Confidential Source 2 also previously told law enforcement that Confidential Source 2 had seen **Dotson** with heroin or fentanyl broken down into one-gram, five-gram, and 10-gram quantities for sale.

On June 13, 2019, **Dotson** called **Coconspirator A** (one of **Dotson**'s suppliers) and explained that he only had "14 of this raw . . . left," meaning that **Dotson** only had 14 grams of fentanyl in his drug supply. Three days later, **Dotson** told **Coconspirator A** that he needed "fetty" and that he could pay "1,100 for half," meaning that **Dotson** would purchase half an ounce (or 14 grams) of fentanyl from **Coconspirator A**. **Dotson** and **Coconspirator A** then met in Hillcrest, Maryland, where **Coconspirator A** supplied **Dotson** with 14 grams of fentanyl. Two days after that meeting, **Dotson** called **Coconspirator A** and ordered "the same thing," meaning an additional 14 grams of fentanyl.

On June 20, 2019—while distributing fentanyl on **Dotson**'s behalf—**Woodland** called **Dotson** and told him that **Woodland** had "17 little ones . . . [and] bigs" left in his supply. By this, **Woodland** meant that he had 17 half-gram quantities and 11 gram quantities of fentanyl that he could sell. During the same conversation, **Woodland** told **Dotson** that he had a firearm, and

**Dotson** told **Woodland** that he had a ".45, Smith & Wesson . . . a nine . . . [and] another little .38." **Dotson** then left the area to compete in an amateur car racing event, and gave his phone to **Woodland** ("the drug phone") so that **Woodland** could continue selling fentanyl to **Dotson**'s customers. Over the next four days, **Woodland** distributed fentanyl to **Dotson**'s Maryland-based drug customers.

In June and July 2019, **Harvey**—working at **Dotson**'s direction—sold fentanyl to **Dotson**'s customers. For example, on June 12, 2019, **Harvey** sold $200 of fentanyl to Individual 2. One week later, **Harvey** distributed fentanyl to one of **Dotson**'s customers in Waldorf, Maryland. Similarly, on July 8, 2019, **Harvey** distributed "two bags" of fentanyl to Individual 5, who was one of **Dotson**'s customers. Later that month, **Harvey** helped **Dotson** open a storage locker in Waldorf, Maryland that the organization used as a location to store drug proceeds and drug paraphernalia.

On July 3, 2019, **Dotson** and **GRAY** separately travelled to a hotel in La Plata, Maryland, where they each met with and sold a distribution quantity of fentanyl to Individual 2.

On July 9, 2019, **Dotson** and **GRAY** discussed strategies for selling drugs over the phone. During that conversation, **GRAY** told **Dotson**, "I'm a bag up most of them all in balls. I got like, I got like 70 of good," meaning that he had 70 grams of high-quality controlled substances and intended to package the drugs into eight balls, or 3.5-gram quantities. Five days later, **GRAY** told **Dotson** over the phone that he received an order for "14 grams . . . of down," meaning 14 grams of fentanyl. The next month, on August 4, 2019, **Dotson** texted **GRAY** a photograph depicting 13.99 grams of fentanyl on a digital scale, then asked **GRAY** to delete the text message.

On July 27, 2019, law enforcement intercepted communications between **Dotson** and **Woodland** indicating that **Woodland** was in possession of **Dotson**'s fentanyl and was distributing that fentanyl on **Dotson**'s behalf. That day, law enforcement attempted to conduct a traffic stop of **Woodland**, who failed to stop for 3.6 miles and instead led officers on a low-speed police chase. During the pursuit, **Woodland** discarded **Dotson**'s fentanyl from the window of **Woodland**'s Range Rover.

On August 5, 2019, **Dotson**, **GRAY**, and **Mackall** met so that **Dotson** could give **Mackall** his drug phone. Four days later, while **Mackall** was using **Dotson**'s phone to sell fentanyl on **Dotson**'s behalf, **Mackall** met with Individual 5, who was one of **Dotson**'s customers. After **Mackall** and Individual 5 engaged in a hand-to-hand drug transaction, law enforcement arrested **Mackall**, who was in possession of 21 red plastic bags and 13 blue plastic bags containing fentanyl. After **Mackall** was arrested, **Dotson** called **GRAY** and told him, "they got the phone and everything dog. Somebody had to set her up."

On August 15, 2019, law enforcement executed search warrants on nine different locations, including **Dotson**'s business location and the residences of **Dotson**, **GRAY**, and **Harvey**. From **GRAY**'s residence (located in Bryans Road, Maryland), law enforcement seized the following:

　　　a.　　$1,800 in United States currency that represents proceeds from **GRAY**'s
　　　　　　distribution of controlled substances (including fentanyl);

b.    A Smith and Wesson Model SW40VE .40 caliber pistol bearing serial number DSD5272;

c.    A Thompson Auto-Ordinance Model ZG-51 "Pit Bull" .45 ACP caliber pistol bearing serial number AOC57166;

d.    A Taurus Model PT 58 .380 caliber pistol bearing serial number KCV05614;

e.    A Taurus Model PT111 G2 9mm caliber pistol bearing serial number TJT88762;

f.    Approximately 13 rounds of .40 caliber ammunition;

g.    Approximately three rounds of .45 caliber ammunition;

h.    Approximately 19 rounds of 9mm ammunition; and

i.    Several small bags of cocaine base.

On or about August 15, 2019, law enforcement also searched and seized **GRAY**'s 2007 Ford F-150 XLT truck ("**GRAY**'s truck") from a location in Clinton, Maryland. During the search of **GRAY**'s truck, law enforcement seized the following additional magazines and ammunition:

a.    Three 9mm magazines and approximately 29 rounds of 9mm ammunition;

b.    One .45 magazine and approximately nine rounds of .45 caliber ammunition;

c.    Approximately 92 rounds of .357 caliber ammunition; and

d.    Approximately six rounds of .380 caliber ammunition.

Prior to August 15, 2019, **GRAY** had been, and knew that he had been, previously convicted of a crime punishable by imprisonment for a term exceeding one year and his civil rights had not been restored.

Prior to August 15, 2019, **GRAY**'s Smith and Wesson Model SW40VE .40 caliber pistol bearing serial number DSD5272, Thompson Auto-Ordinance Model ZG-51 "Pit Bull" .45 ACP caliber pistol bearing serial number AOC57166, Taurus Model PT 58 .380 caliber pistol bearing serial number KCV05614, and Taurus Model PT111 G2 9mm caliber pistol bearing serial number TJT88762 ("the firearms") were manufactured outside of Maryland and therefore travelled in interstate commerce.

**GRAY** possessed the firearms, magazines and ammunition recovered from **GRAY**'s residence and **GRAY**'s truck in order to commit or to facilitate his distribution of controlled substances (including fentanyl). **GRAY**'s 2007 Ford F-150 truck was purchased with proceeds of

his distribution of controlled substances (including fentanyl) and was used to commit or facilitate his distribution of controlled substances (including fentanyl).

SO STIPULATED:

Gregory Bernstein
Erin Pulice
Assistant United States Attorneys

Marvin Windell Gray
Defendant

Charles Burnham, Esq.
Counsel for Defendant

Rev. August 2018

14